# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTMINSTER AMERICAN** | : | CIVIL ACTION |
| **INSURANCE COMPANY** | : | |
| *Plaintiff* | : | NO. 17-5226 |
| | : | |
| v. | : | |
| | : | |
| **SPRUCE 1530, LLC,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                         APRIL 9, 2019

## MEMORANDUM OPINION

**INTRODUCTION**

  This is a declaratory judgment action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, by Plaintiff Westminster American Insurance Company ("Plaintiff"), as the insurer, to determine whether Plaintiff is obligated to defend and/or indemnify Defendants Spruce 1530, LLC ("Spruce 1530"), Al Shapiro, and Ernest Miller (collectively, "Defendants") in a civil action filed against Defendants in state court by Touraine, L.P. ("Touraine"), a non-party to this action. [ECF 1]. Presently before this Court are cross-motions for summary judgment filed by the parties in which the issues have been fully briefed and are now ripe for disposition. For the reasons set forth, Defendants' motion is granted, judgment is entered in favor of Defendants, and Plaintiff's motion is denied. Accordingly, Plaintiff is obligated to defend Defendants.

## BACKGROUND

This matter has a protracted procedural history which encompasses multiple state court civil actions. The cross-motions for summary judgment are based on the following uncontested relevant facts:[1]

> Since January 28, 1998, Touraine has owned a parcel of real property located at 1520-1528 Spruce Street, Philadelphia, Pennsylvania (the "Touraine Property"), on which is erected a 13-story multi-unit apartment building owned and operated by Touraine (the "Touraine Building").
>
> Since May 1, 2001, Spruce 1530 has owned a parcel of real property located at 1530-1532 Spruce Street, Philadelphia, Pennsylvania (the "Newport Property"), on which is erected a 9-story multi-unit apartment building owned and operated by Spruce 1530 (the "Newport Building").
>
> The Newport Property and the Touraine Property are adjacent to one another. The Newport Property's eastern border runs alongside the Touraine Property's western border (the "Disputed Area"), and is the source of the parties' dispute.
>
> In 2015, Spruce 1530 and Touraine filed separate lawsuits against each other in state court which involved renovations to "Apartment 124" in the Newport Building, and two "niches" therein. These cases were consolidated, and in December 2016, the state court judge issued findings of fact and conclusions of law, which included, *inter alia*, the following conclusions:
>
> - The two "niches" at issue protrude from the Newport Building across the Disputed Area.
> - Spruce 1530's encroachment into Touraine's property was intentional and not privileged.
> - Spruce 1530's encroachments constitute a trespass against the property of Touraine.

---

[1] In reviewing a motion for summary judgment, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Publ. Schs.*, 486 F.3d 791, 974 (3d Cir. 2007). Because an insurer's duty to defend an action against its insured is initially determined on the basis of the allegations contained in the underlying complaint against the insured, most of the facts set forth in this section are drawn from the state court complaint in the underlying action. *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 108 n.3 (3d Cir. 2009) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290-92 (Pa. 2007)). However, some facts in this section are drawn from the parties' respective motions and responses thereto. While most of the facts material to the parties' cross-motions are undisputed, where disputed, this Court has construed the facts in favor of Plaintiff.

- Spruce 1530 was negligent in its failure to determine where the property line was before constructing improvements across the Disputed Area. (ECF 10-15).

### *Allegations from the Underlying Complaint*

In June 2017, Touraine filed a second civil action (the "Underlying Action") against, *inter alia*, Spruce 1530, Shapiro, and Miller. The complaint (the "Underlying Complaint") alleges the following:

In May 2016, Defendants "orchestrated an intentional trespass" onto a new roof system on the Touraine Building, demolished part of the new roof work, and cut holes through waterproofing and flashing materials. In March 2017, "Touraine learned that defendant [Spruce] 1530 was trespassing across the property line separating the Touraine Property from the Newport Property," when Maser Consulting ("Maser"), working on behalf of Touraine, permanently scribed the property line on the walls and floors of the easterly portion of the ground floor of the Newport Building. (ECF 11-1 at ¶¶ 4.B, 69).

In May 2017, Maser performed other external surveys of the Newport Building and, ultimately, prepared three supplemental surveys. These surveys "revealed and documented, for the first time," eight encroachments by the Newport Building onto the Touraine Property, which included two new encroachments located in Apartment 124 in the Newport Building. (*Id.* at ¶ 71). Touraine further alleges that Spruce 1530's "intentional trespasses and unauthorized uses of the Touraine Property have . . . enabled 1530 to illegally and unjustly realize, at Touraine's expense and to the detriment of Touraine's property rights, economic benefits associated with [the eight encroachments]." (*Id.* at ¶ 74).

Specifically, in the Underlying Complaint at Count I, Touraine asserts a trespass claim based on the allegations of the rooftop vandalism. At Counts II through IX, Touraine claims that each of the eight encroachments constitutes a trespass and that "Touraine previously demanded that 1530 cease any and all unlawful forms of trespass onto the Touraine Property, and into the Touraine Building, but 1530 has refused to comply." (*Id.* at ¶¶ 92, 99, 106, 113, 120, 127, 134, 141). The Underlying Complaint seeks "compensatory, consequential, incidental and all other appropriate forms of damages to which Touraine is entitled as a result of [Spruce] 1530's unlawful misappropriation and improper use of the Touraine property via the [eight encroachments]." (*Id.* at ¶¶ 93.C, 100.C, 107.C, 114.C, 121.C, 128.C, 135.C, 142.C). Touraine also seeks declaratory relief and a quiet title as to each encroachment.

### *Insurance Policy at Issue*

Prior to the Underlying Action, Spruce 1530 had purchased a Commercial General Liability Policy (the "Policy") from Plaintiff, which continued to be in

effect at the time the Underlying Action was filed. Pertinently, the Policy provides in section 1, "Property Damage Liability" as follows:

> a. "We" pay all sums which an "insured" becomes legally obligated to pay as "damages" due to . . . "property damage" to which the insurance applies. We have the right and duty to defend the "insured" against a "suit" seeking "damages" which may be covered under the Commercial Liability Coverage. However, we have no duty to defend the "insured" against a "suit" seeking "damages" arising out of . . . "property damage" to which this policy does not apply. (Policy at p. 48).
>
> ****
>
> d. This insurance applies only to . . . "property damage":
> 1) caused by an "occurrence" which takes place in the "coverage territory";
> 2) which occurs during the policy period[.] (*Id.*)

In the "Additional Definitions" section of the Policy, "occurrence" is defined as "an accident and includes continuous or repeated exposure to similar conditions." (*Id.* at p. 45). "Property damage" is defined as:

> a. physical injury or destruction of tangible property, including loss of use of that property. Loss of use is deemed to occur at the time of the physical injury that caused it; or
>
> b. the loss of use of tangible property that has not been physically damaged. Loss of use is deemed to occur at the time of the "occurrence" that caused it. (*Id.* at p. 47).

Further, section 2 of the Policy's "Property Damage Liability" removes liability coverage under several exclusions, including the following:

> d. We do not pay for . . . "property damage":
> 1) which is expected by, directed by, or intended by the "insured"; or
> 2) that is the result of intentional and malicious acts of the "insured." (*Id.* at p. 49).

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 governs the practice for summary judgment motions. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

4

movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims and/or defenses, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. *Celotex*, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. *Anderson*, 477 U.S. at 249–50. In order to defeat a motion for summary judgment, there must be more than a scintilla of evidence supporting the non-moving

5

party and more than some metaphysical doubt as to the material facts. *Id.* at 252; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999).

The standards to be applied in deciding cross-motions for summary judgment are the same as those applied when only one party has filed a summary judgment motion; the court rules "on each party's motion on an individual and separate basis, determining, for each side, whether summary judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 403 (3d Cir. 2016) (citation and internal quotation marks omitted).

## DISCUSSION

Here, the parties' underlying cross-motions for summary judgment center on the issue of whether Plaintiff has a duty to defend and/or indemnify Defendants. Whether an insurer owes a duty to defend an insured in a lawsuit brought against the insured is dependent on the allegations in the underlying complaint and on the language of the insurance policy at issue. *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)).

The facts in this case are essentially undisputed. The central issue is whether *any* of the trespass claims brought by Touraine in the Underlying Action could potentially be covered under the Policy, which would necessitate Plaintiff's duty to defend Defendants against the *entirety* of the Underlying Action. Defendants argue that Touraine's trespass claims in the Underlying Complaint are rooted in negligence and, therefore, are covered claims under the Policy. Plaintiff, on the other hand, argues that because Touraine alleges in the Underlying Complaint that

6

Defendants acted intentionally, the trespass claims cannot be rooted in negligence and are, therefore, not covered.

Under Pennsylvania law,[2] an insurer's duty to defend is broader than its duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). An insurer may have a duty to defend even though it may have no duty to indemnify. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). A duty to indemnify does not arise until the insured is found liable for a covered claim. *Id.*

To determine whether Plaintiff owes a duty to defend Defendant in the Underlying Action, the allegations in the Underlying Complaint and the language of the Policy must be examined and compared. As such:

> [A]n insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings . . . . In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay [the] resulting judgment . . . . [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.

*Donegal*, 938 A.2d at 290 (citation omitted).

To determine whether a claim is covered by an insurance policy, the court must compare the four corners of the policy to the four corners of the underlying complaint. *Id.* If the underlying state court complaint alleges an injury "which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. Ct. 1986). "To

---

[2] The parties agree that Pennsylvania substantive law governs this action. Accordingly, this Court will treat the decisions of the Pennsylvania Supreme Court as binding precedent, and the decisions of the Pennsylvania Superior Court as persuasive precedent. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 108 n.2 (3d Cir. 2009) (citing *Jewelcor Inc. v. Karfunkel*, 517 F.3d 672, 676 n.4 (3d Cir. 2008)).

7

prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). The duty to defend is properly denied where the allegations fall within a clear and unambiguous exclusion of coverage. *Harrison v. Aetna Life & Casualty*, 473 A.2d 636, 636 (Pa. Super. Ct. 1984).

Here, under a fair reading of the Policy, Plaintiff would be required to defend Defendants against a suit based on "property damage" *only* if such damage was caused by an "occurrence," which is defined as "an accident and includes continuous or repeated exposure to similar conditions." (Policy at pp. 45, 48). Pennsylvania law defines "accident" in the context of insurance policies as "an unexpected and undesirable event which occurs unintentionally and necessarily involves a degree of fortuity." *Baumhammers*, 938 A.2d at 292.

"[W]hen the conduct of the insured is alleged to be intentional, there is no accident." *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 507 (E.D. Pa. 2006) (citing *Kirkpatrick v. AIU Ins. Co.*, 204 F. Supp. 2d 850, 854 (E.D. Pa. 2002)). This notion aligns with "the basic premise of insurance: 'to cover only fortuitous losses.'" *Id.* (quoting *United Services Auto. Assoc. v. Elitzky*, 517 A.2d 982, 986 (Pa. Super. Ct. 1986)). Providing insurance for intentional acts would be in contravention of Pennsylvania public policy. *Id.* (citing *Elitzky*, 517 A.2d at 986). Thus, to determine whether an alleged injury is caused by an occurrence, courts look to the factual allegations of the complaint and consider whether they are consistent with a negligence claim or negligent conduct. *Travelers Prop. Cas. Co. of Am. v. Mericle*, 486 F. App'x 233, 236 (3d Cir. 2012); *Haver*, 725 A.2d at 745 ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint."); *Scopel v. Donegal Mut.*

*Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997) ("[I]n focusing attention upon the *cause of action* pled, [claimants] run afoul of our case law, which dictates that the *factual averments* contained in a complaint determine whether an insurer must defend.") (emphasis in original).

As noted, Plaintiff argues that Defendants' conduct as alleged in the Underlying Complaint was intentional, and therefore does not comport with Pennsylvania's definition of "accident," as incorporated into the Policy. Defendants dispute this contention and argue that (a) the factual allegations at Count I potentially state a claim that in May 2016 Defendants negligently crossed the property line to perform work on the roof of the Touraine Building, and (b) the factual allegations at Counts II through IX potentially state claims of Defendants' negligence in failing to ascertain the property line.

With regard to Count I proffering a covered claim, this Court agrees with Plaintiff that it does not. At Count I, Touraine specifically alleges that Defendants vandalized the roof of the Touraine building by demolishing part of the new roof and cutting holes through the waterproofing and flashing materials. These are unequivocal allegations of intentional conduct. As such, this conduct is not a covered claim.

However, with regard to the factual allegations at Counts II through IX, this Court finds that these allegations may be premised on claims of negligence. In the Underlying Complaint, Touraine asserts that Spruce 1350's "intentional trespasses and unauthorized uses of the Touraine Property have . . . enabled 1530 to illegally and unjustly realize, at Touraine's expense and to the detriment of Touraine's property rights, economic benefits associated with [the eight encroachments]," for which Touraine seeks damages "as a result of 1530's unlawful misappropriation and improper use of the Touraine property via the [eight encroachments]." These are allegations of the loss of use of tangible property, which, when caused by an "occurrence" (*i.e.*,

an accident or negligence), is included in the Policy's definition of covered "property damage." Spruce 1530's label of the trespasses as intentional is immaterial, as this Court must look instead to the factual averments of the Underlying Complaint itself. *Haver*, 725 A.2d at 745. There is no indication in the Underlying Complaint that Touraine is limiting its allegations and requested damages concerning Spruce 1530's alleged unlawful misappropriation and improper use of the Touraine property to encroachments that occurred after March 2017 (when Touraine alleged that it "learned" that Spruce 1530 was trespassing) or May 2017 (when Touraine alleged that Maser's surveys "revealed and documented, for the first time" the eight encroachments). Rather, the allegations in the Underlying Complaint appear to include the time *before* the discovery of the eight encroachments by Touraine, as documented by Maser. The state court judge concluded in the December 2016 findings of fact and conclusions of law that Spruce 1530 was negligent in failing to determine where the property line was before initiating improvements in Apartment 124 over the property line. It thus stands to reason that a factfinder could conclude from the allegations in the Underlying Complaint that Defendants' negligent failure to determine the property line caused at least some, if not all, of the eight encroachments (particularly the two in Apartment 124), and, thus, that these encroachments were caused by an "occurrence," or accident. Accordingly, this Court finds that Plaintiff has a duty to defend Defendants in the Underlying Action.[3]

---

[3] In their motion, Defendants also request a declaration that Plaintiff has a duty to indemnify them. Because resolution of the Underlying Action is still pending, the Court cannot at this time rule on whether Plaintiff has a duty to indemnify Defendants. *See Frog, Switch & Mfg. Co.*, 193 F.3d at 746 (noting that a duty to indemnify does not arise until the insured is found liable for a covered claim); *see also Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F. Supp. 2d 339 (E.D. Pa. 2011) (finding that insurer had duty to defend, but refraining from deciding insurer's duty to indemnify because underlying action was ongoing).

## CONCLUSION

For the reasons set forth, particularly this Court's conclusion that some of the claims in the Underlying Complaint are potentially covered by the Policy, Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied. Accordingly, judgment is entered in favor of Defendants. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.